UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHILBERT KHACHIKIAN,<br><br>        Petitioner,<br><br>v.<br><br>JEREMY CASEY, Warden, Imperial Regional Detention Facility; JOSEPH FREDEN, Acting Field Office Director, U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States,<br><br>        Respondents. | Case No.: 25cv3737-GPC(JLB)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

On December 23, 2025, Zhilbert Khachikian ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to be released from his unlawful detention at the Imperial Regional Detention Facility in Calexico, California. (Dkt. No. 1, Pet.) Respondents file a return on January 2, 2026, and Petitioner filed a traverse on

January 6, 2026.  (Dkt. Nos. 8, 9.)  Based on the reasoning below, the Court GRANTS the petition for writ of habeas corpus.

## Background

Petitioner, a 72 year old Iranian man of Armenian ethnicity, entered the United States at or near San Ysidro, California without being admitted or paroled after inspection by an Immigration Officer around February 3, 1999 and has been residing in the U.S. continuously since that time.  (Dkt. No. 1, Pet. ¶ 28; Dkt. No. 8-2, Perez Decl. ¶ 6.)  On June 24, 1999, Petitioner was issued a notice to appear for removal proceedings under the Immigration and Nationality Act ("INA") § 240 charging him with being inadmissible and subject to removal pursuant to INA § 212(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled or who has arrived in the United States at any time or place other than as designated by the Attorney General.  (Dkt. No. 8-2, Perez Decl. ¶ 7.)

On October 25, 1999, an Immigration Judge ("IJ") in Los Angeles, California, entered a removal order against Petitioner, in part due to lack of sufficient evidence. (Dkt. No. 1, Pet. ¶ 32; Dkt. No. 8-2, Perez Decl. ¶ 8.)  The IJ stated in open court and in the removal order that if Petitioner could procure additional information about membership in the Bahai faith or receipt of a Bahai ID, he could file a motion to reconsider the decision.  (Dkt. No. 1, Pet. ¶ 32.)

On November 8, 1999, Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA") and the appeal was dismissed on April 15, 2002.  (*Id.* ¶ 33; Dkt. No. 8-2, Perez Decl. ¶¶ 10, 11.)   On July 25, 2002, Petitioner filed a motion to reopen with the BIA which was denied on July 22, 2003.  (Dkt. No. 8-2, Perez Decl. ¶¶ 12, 13.)  On August 20, 2003, Petitioner filed a motion to reconsider the denial of the motion to reopen with the BIA which was denied on October 2, 2003.  *(Id.* ¶¶ 14, 15.)

On August 20, 2003, Petitioner petitioned for review with the Ninth Circuit Court of Appeals, and while the Ninth Circuit issued a stay of removal throughout the duration

of proceedings, the petition was denied on February 11, 2005 and a mandate issued on April 5, 2005. (Dkt. No. 1, Pet. ¶ 35; Dkt. No. 8-2, Perez Decl. ¶¶ 16, 17.)

On or about August 25, 2008, ICE detained Petitioner on the final order of removal and released him under an Order of Supervision and Unsupervised Parole ("OSUP") program. (Dkt. No. 1, Pet. ¶ 37; Dkt. No. 1-2, Pet., Ex. A[1]; Dkt. No. 8-2, Perez Decl. ¶ 18.) The OSUP program required periodic check-ins with ICE, but otherwise allowed Petitioner to live freely and move about, engage in gainful employment, and participate as a contributing member to society, as long as he continued to update ICE of any permanent changes in address or phone number. (Dkt. No. 1, Pet. ¶ 37.) Petitioner continued to live a full life became a contributing member of society, and raised a family which now includes U.S. citizen grandchildren. (*Id.* ¶ 36.)

In 2025, ICE placed Petitioner under an additional Intensive Supervision Appearance Program ("ISAP"), requiring additional check-ins using apps, phone calls and other requirements. (*Id.* ¶ 38.) ISAP initially placed a GPS ankle bracelet on Petitioner, but due to medical reasons ISAP agreed to remove the ankle bracelet. (*Id.*) Petitioner was still allowed to live freely and move about, engage in gainful employment, and participate as a contributing member to society, as long as he continued to update ICE of any permanent changes in address or phone number. (*Id.*) For the past 17 years, Petitioner has complied with all OSUP and ISAP requirements without any issue. (*Id.* ¶ 39.)

On November 16, 2025, while Petitioner was at the home of his in-laws in Los Angeles, ISAP employees asked him to come out of the home so they could verify some information. (*Id.* ¶ 42.) The statement was a mere pretext to detain him because once Petitioner stepped outside the gated community, multiple ISAP employees were waiting

---

[1] The Order of Supervision attached is dated May 21, 2012, no August 25, 2008. (Dkt. No. 1-2, Pet, Ex. A.)

for Petitioner, and they arrested him without any further explanation and took him to an ICE detention facility. (*Id.*)

On the following day, November 17, 2025, Petitioner was served with a Notice of Revocation of Release ("Notice") while in ICE custody at 300 N. Los Angeles Street. (*Id.* ¶ 43.) The document stated, "ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you. On July 22, 2003, you were ordered removed to IRAN by an Immigration Judge and you are subject to an administrative final order of removal. You were released on an order of supervision on or about August 25, 2008. ICE has determined the purpose of your release has been served and it is appropriate to enforce the removal order." (Dkt. No. 1-3, Pet., Ex. B at 2 (emphasis removed).[2]) The Notice advised Petitioner that he would promptly be given an informal interview during which he could respond to the reasons for revocation and provide relevant evidence that removal is unlikely. (*Id.*)

On November 17, 2025, DHS conducted an informal interview where Petitioner was offered an opportunity to make a statement concerning the revocation of the order of supervision but he did not; instead, he orally stated that he would wait for his attorney. (Dkt. No. 8-2, Perez Decl. ¶ 20; Dkt. No. 8-3, Respts' Table of Exs., Ex. A at 4.) In the traverse, Petitioner, through counsel, states that Petitioner was not afforded an interview with a meaningful opportunity to discuss or respond to the Notice and was never provided the factual or legal reasons for the revocation of his release. (Dkt. No. 9-1, Darbinian Decl. ¶¶ 4-6.) According to Petitioner's counsel, Petitioner did not refuse to response or waive his right to be heard when he stated, "I will wait for my lawyer"; rather, Petitioner invoked his right to counsel. (*Id.* ¶ 7.)

On information and belief, prior to his detention, Petitioner was given no notice of ICE's or ISAP's intention to detain him, and he was not provided with any

---

[2] Page numbers are based on the CM/ECF pagination.

reasonable information about why his OSUP was revoked. (Dkt. No. 1, Pet. ¶ 44.) On information and belief, Petitioner was arrested and detained without any warrant, and any documentation and the Notice was only prepared after his detention. (*Id.* ¶ 45.) On information and belief, ICE had no particularized evidence that Petitioner can be repatriated or deported to Iran at the time he was detained and continue to have no particularized evidence that Petitioner can be removed at this time. (*Id.* ¶ 46.) On information and belief, Petitioner has not received an individualized hearing before a neutral decisionmaker to assess whether his recent detention is warranted due to danger or flight risk. (*Id.* ¶ 47.)

On November 17, 2025, Petitioner's counsel reached out to ICE and requested to speak with anyone who could speak on the matter, in particular the ICE deportation officer or supervisor assigned to Petitioner's case. (*Id.* ¶ 48.) Nobody from ICE responded. (*Id.*) On November 18, 2025, Petitioner's counsel visited the detention center at 300 N. Los Angeles Street, Los Angeles, CA 90012 where Petitioner was being detained at the time, and managed to speak with Supervisory Deportation Officer Casillas. (*Id.* ¶ 49.)

Supervisor Casillas advised Petitioner's counsel that they were unaware why Petitioner was detained, that the ISAP team was the one who brought Petitioner to their facility, that the Los Angeles facility was a temporary holding facility, that Petitioner would soon be transferred to a larger detention center, and that counsel would need to follow up with the deportation officer assigned to his case. (*Id.*) Around November 20, 2025, Petitioner was transferred by ICE to the Imperial Regional Detention Facility, where he remains to date. (*Id.* ¶ 50; Dkt. No. 1-4, Pet., Ex. C.) Petitioner's counsel repeatedly contacted ICE for an update, and ICE continued to remain nonresponsive until November 24, 2025 when counsel learned that the ICE ERO employee assigned to Petitioner's case was Deportation Officer Salvador Perez ("DO Perez"). (Dkt. No. 1, Pet. ¶ 51.) Petitioner's counsel spoke with DO Perez on November 24, 2025 who told her by

phone that there was an outstanding order of deportation to remove Petitioner to Iran, and he will be contacting the country of Iran for necessary paperwork. (*Id.* ¶ 52.)

Petitioner's counsel advised DO Perez that the U.S. does not have diplomatic relations with Iran, and requested a reconsideration of release as he cannot be removed to Iran. (*Id.* ¶¶ 53, 54.) Petitioner's counsel provided additional information about Petitioner's mature age and medical issues, his fear of removal to Iran, and further explained why ICE lacked authority to detain Petitioner as the removal period had ended long ago and no event had made his removal reasonably foreseeable. (*Id.* ¶ 54.) In addition, Petitioner's counsel explained that Petitioner planned to file a new motion to reopen his removal proceedings with new evidence of changed circumstances and persecution on account of his Bahai faith, including but not limited to his acquisition of a Bahai ID as referenced on the IJ's removal order in 1999. (*Id.*)

Petitioner's counsel also requested that ICE reconsider Petitioner's detention, especially in light of his medical issues. (*Id.* ¶ 55.) Further, ICE could continue to process any request for travel authorization without Petitioner in detention because ICE was already constantly aware of Petitioner's whereabouts under the concurrent OSUP and ISAP programs and GPS monitoring through Petitioner's phone. (*Id.*) DO Perez said he would raise this request with his supervisor, but for now his job was to continue procuring documents from Iran, and Petitioner would remain in custody. (*Id.* ¶ 56.) DO Perez advised counsel that that he does not know how long the process will take, but Petitioner's removal was not immediate nor imminent because he still needed to obtain paperwork and travel documentation for Petitioner. (*Id.*)

On December 8, 2025, the Enforcement and Removal Operations ("ERO") requested that Petitioner complete Form I-217, Information for Travel Document or Passport, related with a travel document request to the Iran Interests Section of the

6

25cv3737-GPC(JLB)

phone that there was an outstanding order of deportation to remove Petitioner to Iran, and he will be contacting the country of Iran for necessary paperwork. (*Id.* ¶ 52.)

Petitioner's counsel advised DO Perez that the U.S. does not have diplomatic relations with Iran, and requested a reconsideration of release as he cannot be removed to Iran. (*Id.* ¶¶ 53, 54.) Petitioner's counsel provided additional information about Petitioner's mature age and medical issues, his fear of removal to Iran, and further explained why ICE lacked authority to detain Petitioner as the removal period had ended long ago and no event had made his removal reasonably foreseeable. (*Id.* ¶ 54.) In addition, Petitioner's counsel explained that Petitioner planned to file a new motion to reopen his removal proceedings with new evidence of changed circumstances and persecution on account of his Bahai faith, including but not limited to his acquisition of a Bahai ID as referenced on the IJ's removal order in 1999. (*Id.*)

Petitioner's counsel also requested that ICE reconsider Petitioner's detention, especially in light of his medical issues. (*Id.* ¶ 55.) Further, ICE could continue to process any request for travel authorization without Petitioner in detention because ICE was already constantly aware of Petitioner's whereabouts under the concurrent OSUP and ISAP programs and GPS monitoring through Petitioner's phone. (*Id.*) DO Perez said he would raise this request with his supervisor, but for now his job was to continue procuring documents from Iran, and Petitioner would remain in custody. (*Id.* ¶ 56.) DO Perez advised counsel that that he does not know how long the process will take, but Petitioner's removal was not immediate nor imminent because he still needed to obtain paperwork and travel documentation for Petitioner. (*Id.*)

On December 8, 2025, the Enforcement and Removal Operations ("ERO") requested that Petitioner complete Form I-217, Information for Travel Document or Passport, related with a travel document request to the Iran Interests Section of the

Embassy of Pakistan but he refused to comply.[3] (Dkt. No. 8-2, Perez Decl. ¶ 21.) Despite his refusal, ERO completed the form using information available to it in DHS records and databases. (*Id.* ¶ 22.) On December 22, 2025, ERO forwarded a finalized travel document request to the Iran Interests Section in Washington D.C. which is currently pending. (*Id.* ¶ 23.) DHS has been successful in effectuating final orders of removal to Iran via charter flight; in Fiscal Year 2025, DHS removed 135 Iranian nationals to Iran.[4] (*Id.* ¶ 26.) DHS believes there is a significant likelihood of Petitioner's removal to Iran in the reasonably foreseeable future. (*Id.* ¶ 27.)

The petition challenges the legality of Petitioner's immigration detention on the following grounds: (1) that his revocation of release was unlawful because Respondents did not provide evidence that he can be immediately removed to Iran in the reasonably foreseeable future; (2) that his revocation of release violated 8 C.F.R. § 241.13(i)(3) for failing to provide notice and reasons for his detention and to conduct an initial interview; (3) that his detention is unlawful because his removal is not reasonably foreseeable as contemplated by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (4) that his detention violates his due process rights because he was not provided with an individualized determination of danger or flight risk; (5) that his removal is unlawful to a third country;[5] and (6) declaratory judgment. (Dkt. No. 1, Pet. ¶¶ 65-105.) Respondents argue Petitioner's

---

[3] Due to the lack of formal diplomatic relations between the United State and Iran since 1980, the Iran Interests Section of the Pakistan Embassy manages the diplomatic and consular affairs of Iran in the United States. (Dkt. No. 8-2, Perez Decl. ¶ 21 n. 1.)

[4] *See* ICE Annual Report Fiscal Year 2024, at p. 99, https://www.ice.gov/doclib/eoy/iceAnnualReportFY2024.pdf (last visited Jan. 5, 2026) (reporting that removals to Iran ranged from 10 to 27 per fiscal year during fiscal years 2019–2024).

[5] Respondents argue Petitioner's fifth claim that his removal to a third country is unlawful does not raise a case or controversy and should be denied as moot because they are not seeking to remove him to a third country and are instead working to remove him to Iran, his home country. (Dkt. No. 8 at 4-5.) In response, Petitioner maintains that Respondents have not affirmatively denied any intent to remove Petitioner to a third country; however, if they do not intend to remove petitioner to a third country, Petitioner agrees the claim is moot. (Dkt. No. 9 at 2-3.) Because Respondents have submitted travel documents to the Iran Interests Section of the Pakistan Embassy to have him removed to Iran rather than a third country, the Court agrees with Respondents and DENIES the fifth claim as moot.

detention is lawful because he has not established there is no significant likelihood of removal in the reasonably foreseeable future under the ruling in *Zadvydas*. (Dkt. No. 8 at 6-10.[6]) They also contend that ICE complied with 8 U.S.C. § 241.13(i) by serving Petitioner with a Notice of Revocation of Release on November 16, 2025, and conducting an informal interview which Petitioner declined to participate in. (*Id.* at 12-16.) They also maintain that Petitioner's refusal to cooperate with ICE's efforts to obtain a travel document authorizes his continued detention. (*Id.* at 10-11.)

## Discussion

### A. Legal Standard

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### B. Subject Matter Jurisdiction

Respondents maintain that this Court lacks jurisdiction over Petitioner's claims under 8 U.S.C. § 1252(g) because Petitioner's claims necessarily arise "from the decision or action by the Attorney General to . . . execute removal orders." (Dkt. No. 8 at 5-6.)

---

[6] Page numbers are based on the CM/ECF pagination.

1   Petitioner replies he is not challenging either the validity of his removal order of 1999 or
2   whether Respondents can execute on the removal order; instead, he is challenging the
3   legality of his unlawful detention. (Dkt. No. 9 at 3.)
4       8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have
5   jurisdiction to hear any cause or claim by or on behalf of any alien arising from the
6   decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases,
7   or *execute* removal orders against any alien[.]" 8 U.S.C. § 1252(g) (emphasis added);
8   *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, §
9   1252(g) is a narrow statutory provision that concentrates on those three discrete actions.
10  *Reno*, 525 U.S. at 482. Section 1252(g) "does not prohibit challenges to unlawful
11  practices merely because they are in some fashion connected to removal orders." *Ibarra-*
12  *Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). This section does not apply to
13  "general collateral challenges to unconstitutional practices and policies used by the
14  agency." *Id.* (internal quotation mark and citation omitted).
15      Here, Petitioner contests his detention resulting from violations of the
16  government's mandatory duties under certain statutes, regulations, and the Constitution;
17  therefore, the Court has jurisdiction to determine the lawfulness of Petitioner's detention.
18  *See Dearinger ex re. Volkova v. Reno,* 232 F.3d 1042, 1044 (9th Cir. 2000) (§ 1252(g)
19  restricts judicial review of deportation orders but "28 U.S.C. § 2241 remains an available
20  remedy to those challenging executive detention.") Thus, § 1252(g) does not present a
21  jurisdictional bar to the instant petition.
22  **C.    Failure to Comply with 8 C.F.R. § 241.13(i)**
23      In Counts 1 and 2, Petitioner argues that ICE unlawfully revoked his release in
24  violation of 8 C.F.R. § 241.13(i)(2). Respondents contend they complied with § 241.13
25  by providing Petitioner with a Notice of Revocation of Release one day after he was
26  detained, and provided him with an informal interview. (Dkt. No. 8 at 13-14.) They also
27  argue there are changed circumstances with ICE's recent ability to schedule removal
28  flights to Iran. (*Id.* at 14.)

It is recognized that government agencies are required to follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). Where an immigration "regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute," like the opportunity to be heard, "and [ICE] fails to adhere to it, the challenged [action] is invalid . . . ." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) (quotation marks omitted)). Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem,* No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

8 U.S.C. § 1231(a) governs the detention of individuals with a final order of removal and provides that a noncitizen must be removed within 90 days. 8 U.S.C. § 1231(a)(1)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).

In *Zadvydas,* the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Zadvydas*, 533 U.S. at 701. Section 1231(a)(6), however, implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States, and does not permit "indefinite" detention. *Id*. at 688. Detention is indefinite if there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. When detention becomes indefinite, the noncitizen must be released on supervision. *Id.* at 699-700.

Both parties discuss the application of *Zadvydas v. Davis*, 533 U.S. 678 (2001) in this case.  Petitioner argues that he has made the initial showing that his removal is not significantly likely, (Dkt. No. 1, Pet. 83), while Respondents contend that Petitioner has failed to establish "that there is no significant likelihood of removal in the reasonably foreseeable future." (Dkt. No. 8 at 8.)  However, the burden-shifting framework and presumptive reasonableness under *Zadvydas* do not apply to Petitioner's situation of re-detainment after he was issued a final order of removal, detained and subsequently released on conditions.  *See Phouvieng K. v. Andrews*, No. 1:25-cv-01512-KES-SAB (HC), 2025 WL 3265504, at *4 (E.D. Cal. Nov. 24, 2025) ("*Zadvydas* does not apply when a noncitizen has been ordered removed, is subsequently released on an order of supervision because the removal order could not be executed, and is then re-detained later.") (citing *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) and *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (*same*); *Kazemi v. Casey*, Case No.: 25cv1926 DMS (DEB), 2025 WL 3179746, at *2 (S.D. Cal. Oct. 7, 2025) (*Zadvydas* presumption of reasonable detention does not apply to re-detention; instead, the government bears the burden that the petitioner "may be removed in the reasonably foreseeable future.")

*Zadvydas* involved the initial detainment of a noncitizen awaiting removal and was never released following a final order of removal.  *Zadvydas*, 533 U.S. at 701.  In that context, the Supreme Court held that once an alien has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner's 90-day removal period expired years ago in 2002 when the order of removal became final, (Dkt. No. 1, Pet 79), and in 2008, he was released with conditions under OSUP and later ISAP.  *See* 8 C.F.R. 241.13(h).  Therefore, the applicable provision for the revocation of Petitioner's release is 8 C.F.R. § 241.13(i).

8 C.F.R. § 241.13[7] governs the release and revocation of release for noncitizens subject to a final removal order who are indefinitely detained. As to revocation of release, 8 C.F.R. § 241.13(i)(2) provides that a noncitizen's supervised release may be revoked and may be returned to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); *Sun v. Noem*, No. 3:25-cv-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) ("ICE's own regulations thus place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."). The procedures mandated by the regulations provide:

> (3) Revocation procedures. Upon revocation, [1] the alien will be notified of the reasons for revocation of his or her release. [2] The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. [3] The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. [4] The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

According to § 241.13(i)(2), ICE must first determine that "on account of changed circumstances," the noncitizen is likely to be removed in the foreseeable future. *See* 8 C.F.R. § 241.13(i)(2). Here, the Notice of Revocation of Release served on Petitioner states his release was revoked pursuant to 8 C.F.R. § 241.13 because "ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you. On July 22, 2003, you were ordered removed to IRAN by

---

[7] 8 C.F.R. § 241.13 codified how *Zadvydas* should apply. *See Continued Detention of Aliens Subject to Final Orders of Removal*, 66 Fed. Reg. 56967 (Nov. 14, 2001).

an Immigration Judge and you are subject to an administrative final order of removal. You were released on an order of supervision on or about August 25, 2008. ICE has determined the purpose of your release has been served and it is appropriate to enforce the removal order." (Dkt. No. 1-3, Pet., Ex. B at 2.) This Notice does not assert or explain that Petitioner is likely to be removed in the foreseeable future in violation of § 241.13(i)(2).[8]

Further, § 241.13(i)(2) requires that the re-detention determination that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future must be made before his release is revoked. *See Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (explaining that ICE's determination regarding the foreseeability of removability must be "made before the removable alien has had his release revoked"). Here, the re-detention was not "on account of" changed circumstances, given that Respondents concede that no travel document for Petitioner has been obtained at the time of detention and ERO sent final travel documents to the Iran Interests Section on December 22, 2025, five weeks after being detained on November 16, 2025. *See Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (finding no evidence of changed circumstances where the government "did not even submit a request to Vietnam for travel

---

[8] To the extent that Respondents may argue, in the event Petitioner is released under this order and re-detained, that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future because they have submitted final travel documents to the Iran Interests Section at the Pakistan Embassy on December 22, 2025 and that they have been successfully able to remove Iranian citizens for several years, Respondents have not provided data as to how long the deportation process takes, how many pending Iranian citizens are currently waiting to be removed, and what type of deportations are given priority. In reply, Petitioner relies on a number of news articles concerning the number and method of repatriation of Iranian nationals to Iran, the fragility of the relationship between the U.S. and Iran, and a statement by Mr. Abolfazl Mehrabadi, Director of Iran's Interest Section in Washington D.C., arguing that his case is not a priority for imminent removal and there is not a significant likelihood that he will be removed in the reasonably foreseeable future. (Dkt. No. 9 at 4-7.) Therefore, in the event of re-detention upon release, Respondents must establish "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future" as such a showing has not yet been demonstrably made. *See* 8 C.F.R. § 241.13(i)(2).

documents" until a month after re-detaining petitioner); *Sphabmixay v. Noem*, No. 25-cv-2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025) (finding no evidence of changed circumstances where the government "did not even submit a request to Laos for travel documents" until a week after re-detaining petitioner).

Next, in violation of § 241.13(i)(3), the Notice did not inform Petitioner of the reasons for the revocation of his release. Merely stating that the "purpose of your release has been served" does not inform Petitioner of the "changed circumstances" that created a "significant likelihood of removal in the reasonably foreseeable future." *See* 8 C.F.R. § 241.13(i)(2), (3); *Phakeokoth v. Noem*, Case No.: 3:25-cv-02817-RBM-SBC, 2025 WL 3124341, at *4 (S.D. Cal. Nov. 7, 2025) (quoting *Sarail A. v. Bondi*, 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *10 (D. Minn. 2025) ("[s]imply [stating] that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough.")) Petitioner must be told "*what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Phakeokoth*, 2025 WL 3124341, at *4 (quoting *Sarail A*., 2025 WL 2533673, at *10).

In addition, ICE's conclusory explanation for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at [any] post-detention informal interview," as required under § 241.13. *See Diaz v. Wofford*, Case No. 1:25-CV-01079 JLT-EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citation and quotation marks omitted); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No.: 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition because "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons"). Therefore, while the parties dispute whether an informal interview took place, if one had occurred, Petitioner would not have been able to respond meaningfully to the reasons for his revocation of his release without being provided reasons for the revocation. Further, because Petitioner was not provided

with the reasons for his release, he did not an opportunity to submit evidence and subsequently was not afforded an evaluation and determination of contested facts. *See* 8 C.F.R. § 241.13(i)(3).[9]

Petitioner has therefore shown that ICE violated its own rule under § 241.13(i)(2) and (3) given the lack of any evidence of a changed circumstance prior to Petitioner's re-detainment.[10] As such, the Court GRANTS the petition for writ of habeas corpus and that Petitioner be released subject to the conditions in his previous order of supervision. *See Constantinovici v. Bondi*, -- F. Supp. 3d --, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (*citing Rokhfirooz v. Larose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting a habeas petition and ordering the petitioner's release where the Government failed to comply with § 241.13); *Hoac v. Becerra,* No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); *Ceesay*, 781 F. Supp. 3d at 164

---

[9] The government also argues that Petitioner's refusal to cooperate with ICE's efforts to obtain travel documents authorizes his continued detention under 8 U.S.C. § 1231(a)(1)(C). (Dkt. No. 8 at 10-12.) Petitioner replies that he has not refused cooperation but has informed ICE officers that he has an attorney and for ICE officers to communicate to his counsel. (Dkt. No. 9 at 7.) In fact, on November 24, 2025, Petitioner's counsel informed DO Perez that she represented Petitioner and to forward any communication to her as Petitioner's counsel. (Dkt. No. 9-2, Darbinian Decl. ¶¶ 2-3.) However, no documents, including the Form I-217 that ICE provided to Petitioner to fill out on December 8, 2025 was provided to his counsel. (*Id.* ¶ 4.) Nonetheless, Petitioner argues that the alleged refusal to cooperate is now moot because Respondents were able to complete and submit final travel documents using its own resources. (Dkt. No. 9 at 7.)
8 U.S.C. § 1231(a)(1)(C) provides, that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Here, because Respondents were able to submit final travel documents on December 22, 2025, their argument is moot.

[10] In the Traverse, for the first time, Petitioner argues that the Notice of Revocation of Release is not valid because it was signed by Deportation Officer R. Romero and Supervisory Detention Deportation Officer T. Gaeta in violation of 8 C.F.R. § 241.4(l)(2) which requires that a decision to revoke a noncitizen's release must be made either by an "Executive Associate Commissioner" or by a "district director. (Dkt. No. 9 at 9; Dkt. No. 1-3, Pet., Ex. B.) However, because the government has not had an opportunity to response, the Court declines to address a new issue raised by in the Traverse.

("[B]ecause ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release.")).[11]

### Conclusion

Based on the above, the Court GRANTS the petition for writ of habeas corpus. The Government shall immediately release Petitioner from custody on the November 16, 2025 revocation of release and arrest. Petitioner shall comply with all conditions that were in effect before his November 16, 2025 re-detainment. The parties must also file a joint status report to confirm that Petitioner has been released on or before **January 12, 2026.** The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: January 8, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[11] In light of the Court's ruling, the Court need not address the fourth and sixth claims.